E-FILED
Tuesday, 31 January, 2023 02:38:34 PM
Clerk, U.S. District Court, ILCD

**IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION**

REGINA M.R.,
      Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,
      Defendant.

Case No. 4:21-cv-04155-JEH

**Order**

Now before the Court is the Plaintiff Regina M.R.'s Motion for Summary Judgment (Doc. 112), the Commissioner's Motion for Summary Affirmance (Doc. 14), and the Plaintiff's Reply (Doc. 15).[1]  For the reasons stated herein, the Court GRANTS the Plaintiff's Motion for Summary Judgment, DENIES the Defendant's Motion for Summary Affirmance, and REMANDS this matter for proceedings consistent with this opinion.[2]

**I**

Regina M.R. filed an application for disability insurance benefits (DIB) on November 25, 2019 and an application for supplemental security income (SSI) on November 1, 2019.  In both applications, Regina alleged disability beginning on June 5, 2019.  Her DIB and SSI claims were denied initially on March 17, 2020 and upon reconsideration on June 25, 2020.  Regina filed a request for hearing concerning her applications which was held on December 15, 2020 before the

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge.   (Docs. 10, 11).

[2] References to the pages within the Administrative Record will be identified by AR [page number].   The Administrative Record appears at (Doc. 7) on the docket.

Honorable Kathryn Preston (ALJ). At the hearing, Regina was represented by an attorney, and Regina and a vocational expert (VE) testified. Following the hearing, Regina's claims were denied on February 10, 2021. Her request for review by the Appeals Council was denied on July 20, 2021, making the ALJ's Decision the final decision of the Commissioner. Regina timely filed the instant civil action seeking review of the ALJ's Decision on September 15, 2021.

## II

Regina argues the ALJ committed the following error: the residual functional capacity determination was not supported by substantial evidence.

## III

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). The Court's function is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

In order to qualify for disability insurance benefits, an individual must show that his inability to work is medical in nature and that he is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in determining whether a plaintiff is eligible for

disability.  *See* 20 C.F.R. §§ 404.1566, 416.966.[3]  The establishment of disability under the Act is a two-step process.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A).  Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment.  *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980).  The factual determination is made by using a five-step test.  *See* 20 C.F.R. §§ 404.1520, 416.920.  In the following order, the ALJ must evaluate whether the claimant:

1)  is performing substantial gainful activity;

2)  suffers from an impairment that is severe and meets a durational requirement, or suffers from a combination of impairments that is severe and meets the durational requirement;

3)  suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;

4)  is unable to perform her past relevant work which includes an assessment of the claimant's residual functional capacity; and

5)  is unable to perform any other work existing in significant numbers in the national economy.

*Id*.  An affirmative answer at Steps Three or Five leads to a finding that the plaintiff is disabled.  *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005).

---

[3] The standards for establishing a disability in order to receive DIB and SSI are materially the same.  *Compare* 20 C.F.R. § 404.1501 *et seq.* (DIB) *with* 20 C.F.R. § 416.901 *et seq.* (SSI).  Thus, the Court may at times only cite to the DIB regulations.

The plaintiff has the burdens of production and persuasion on Steps One through Four. *Id*. However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment. *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011).

In the instant case, Regina claims error on the ALJ's part at Step Four.

## A

At Step One, the ALJ determined Regina had not engaged in substantial gainful activity since June 5, 2019, the alleged onset date. AR 19. At Step Two, the ALJ determined Regina had the following severe impairments: cervical spine degenerative disc disease, status-post fusion surgery; ossification of posterior longitudinal ligament (OPLL); diabetes mellitus; obesity; major depressive disorder; adjustment disorder; intermittent claudication; cervical spine radiculopathy; lumbar degenerative disc disease; fibromyalgia/myalgia; peripheral neuropathy; and right shoulder degenerative joint disease. AR 19-20. At Step Three, the ALJ determined Regina did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. AR 20. At Step Four, the ALJ made the following residual functional capacity (RFC) finding:

> [T]he claimant has the [RFC] to perform a range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). Specifically, the claimant is able to lift up to ten pounds occasionally. She is able to stand/walk for about two hours and sit for up to six hours in an eight-hour workday, with normal breaks. She is unable to climb ladders/ropes/scaffolds, but is occasionally able to climb ramps/stairs, balance, stoop, kneel, crouch, and crawl. She is able to engage in frequent bilateral overhead reaching. She is unable to tolerate exposure to unprotected heights and use of dangerous moving machinery. She is able to perform simple, routine, and repetitive tasks in a work environment free of fast-paced production

4

requirements, involving only simple work-related decisions and routine workplace changes.

AR 21.  The ALJ found Regina was unable to perform any past relevant work.  AR 26.  At Step Five, the ALJ determined that considering Regina's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Regina could perform.  *Id*.  Thus, the ALJ concluded Regina had not been under a disability from June 5, 2019 through the date of the Decision.  AR 27.

**B**

Regina challenges the ALJ's finding that she was able to perform the full range of sedentary work for one discrete reason:  the ALJ erred in her analysis of Regina's cervical range of motion.  If Regina is correct, the error is harmful.  At the hearing, Regina's attorney asked the VE:

> Q.      . . . What if that hypothetical individual was unable to turn their head to the right?  Would that affect the jobs and the availability of those jobs in the national economy? . . .
>
> ALJ:  Did you hear, did you hear counsel's question?   If the individual's unable to turn the head to the right, would that affect jobs?
>
> VE:   . . . I think that particularly in these unskilled positions – assembly, inspector, any type of positions, the individual would have to be able to rotate their, their neck.   And that would be both directions, right and left.

AR 64-65.  Regina argues that no reasonable mind would look at her subjective complaints of pain and the objective record showing she underwent a cervical fusion for her degenerative disc disease along with her fibromyalgia and diabetes with neuropathy and conclude she could perform an eight-hour workday even performing sedentary work.  The Commissioner argues that the applicable legal principles, including that a court is not allowed to displace the ALJ's judgment by

reconsidering facts or evidence or by making independent credibility determinations, show that substantial evidence supported the ALJ's Decision.

In June 2019, Regina complained to her primary care provider of, among other things, significant neck pain. In July 2019, Regina had decreased range of motion of the cervical spine, and in October 2019, diagnostic imaging of her cervical spine confirmed OSLL and multilevel degenerative changes with moderate to severe spinal stenosis at C4-5. After she reported progressive symptoms of radiating neck pain with upper extremity weakness, Regina ultimately underwent a recommended anterior cervical discectomy and fusion (ACDF) from C3 through C7 with plating in December 2019. Later in December 2019, after the surgery, Regina reported neck pain, she had cervical tightness without acute spasms, and she was told to engage in range of motion exercises, begin a 30-minute uninterrupted walk each day, and start physical therapy.

In February 2020, Regina underwent an internal medicine consultative examination at which time she had, as the ALJ put it, "significant, but not complete restriction of cervical spine range of motion[.]" AR 23. In March 2020, Regina reported to her spinal surgeon loss of cervical spine range of motion when looking to her right and ongoing radiating pain, and her clinician again recommended she continue with range of motion activities and 30 uninterrupted minutes of walking per day. She also later received trigger point injections, but she did not report significant relief. In July 2020, Regina reported constant pain in her neck and decreased range of motion, and she was encouraged to engage in activity to comfort and tolerance and to begin physical therapy. At the hearing in December 2020, Regina testified that she had no movement in her neck, driving was hard because she had to turn her whole body to look and see if another vehicle was coming, and she took extra time to drive places as a result.

6

Bearing in mind that the Court must play an "extremely limited role" in its review of the ALJ's Decision, the Court nevertheless finds that the ALJ reversibly erred here. *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009). The ALJ acknowledged that Regina's consultative examination revealed "significant, but not complete restriction of cervical spine range of motion." The exact results were as follows: flexion of 10 in a 0-50 range; extension of 15 in a 0-60 range; left lateral bending of 5 in a 0-45 range; *right lateral bending of 0* in a 0-45 range; left rotation of 10 in a 0-80 range; and *right rotation of 0* in a 0-80 range. AR 650 (emphasis added). In fact, Regina had complete, not just significant, restriction in right lateral bending and right rotation. The ALJ obviously downplayed the implications of the "significant restrictions" noted during the consultative examination where she emphasized the examination was just 12 weeks after Regina's cervical spine surgery. *See also* AR 25 ("The undersigned notes that the findings contained [in the internal medicine consultative examiner's report] are somewhat persuasive, as the claimant was only [2] months removed from ACDF surgery").

However, Regina's reports of and objectively examined diminished cervical spine range of motion continued at outpatient visits in March 2020, April 2020, and July 2020. The ALJ explicitly downplayed that evidence as well where she reasoned that Regina's clinicians' routine recommendation that she engage in range of motion exercises and activity were "indicative of greater functioning than alleged." AR 24. Evidence that Regina was merely *encouraged* to continue range of motion activities is not evidence *in fact* of Regina's increased cervical spine range of motion (beyond 0 in two respects) or of sufficient range of motion to perform the sedentary work detailed in the ALJ's RFC assessment. Perhaps continuing with those exercises would one day, at some *future* time, permit Regina to perform the work detailed in the RFC finding; but an RFC finding necessarily reflects the most a claimant can then-*currently* do at the time the RFC is assessed. *See* 20 C.F.R.

§ 404.1545(a)(1) ("Your residual functional capacity is *the most you can still do despite your limitations*. We will assess your residual functional capacity based on all the relevant evidence in your case record") (emphasis added).  Moreover, the RFC finding must be supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 ("substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion").

That the evidence relied upon falls below the substantial evidence threshold is illustrated by Regina's December 2020 hearing testimony.  After several months of being encouraged to continue range of motion exercises and more than one full year after surgery, Regina testified that she had "no movement in [her] neck," that her range of motion exercises did not help at all, and that her neck range of motion had "probably gotten worse because just the pain."  AR 44, 53.  The ALJ did not build a logical bridge from the evidence to her conclusions where she relied upon equivocal evidence instead of unequivocal objective medical evidence and statements indicating the activities, actually attempted, did not improve Regina's cervical pain and restricted movement.  *See Roddy v. Astrue*, 705 F.3d 631, 638 (7th Cir. 2013) (stating that an ALJ is not required to address in writing every piece of evidence or testimony presented but is required to provide an accurate and logical bridge between the evidence and his conclusions).  Nowhere did the ALJ point to evidence that Regina was, in fact, able to turn her head to the right as of the date of the Decision, February 10, 2021.  In other words, the ALJ did not rely upon actual evidence of greater functioning.  The Court need only look at the evidence, without re-weighing it, to see this error.  This matter must be remanded.

## IV

For the foregoing reasons, the Plaintiff's Motion for Summary Judgment (Doc. 12) is GRANTED, the Defendant's Motion for Summary Affirmance (Doc.

8

14) is DENIED, and this matter is REMANDED pursuant to Sentence Four of 42 U.S.C. § 405(g) to the Commissioner of Social Security for further proceedings consistent with this Opinion.

The Clerk of Court is directed to enter judgment as follows: "IT IS ORDERED AND ADJUDGED that this case is remanded to the Commissioner of Social Security for further proceedings consistent with this Opinion pursuant to 42 U.S.C. § 405(g), Sentence Four."

*It is so ordered.*

Entered on January 31, 2023.

s/Jonathan E. Hawley
U.S. MAGISTRATE JUDGE

9